## The People on the relation of Bay City v. The State Treasurer.

*Railroad aid by towns and counties: Taxation: Bonds.* The municipal corporations of this state have no authority in return for, or upon the basis of, the incidental benefits anticipated, to exercise the power of taxation in aid of private corporations building, or proposing to build, railroads to be owned and controlled by their corporators; and bonds issued by way of such aid, being incipient steps leading to taxation, are unauthorized.

The taxing power of the state has certain definite limits, one of which is that the tax must be for a public purpose; and within the meaning of these words as employed to measure the authority of the state to demand and enforce the contributions of its citizens, a railroad in the hands of a private corporation is no more a public purpose than a manufactory, a newspaper establishment or any other means for the carrying on by individuals of a business which, while private in its nature, nevertheless supplies a public need.

The legislature therefore, can neither compel the taxation of municipalities in aid of railroad companies, nor empower them in order to give such aid to tax themselves or to contract indebtedness which must be paid by taxation. —*People v. Salem, 20 Mich., 452.*

*Due process of law.* To take a man's property from him, under pretense of taxation, for a purpose for which taxation is not admissible, is an unlawful confiscation and not due proc ess of law; and is therefore forbidden by *Art. VI.,* § *32,* of our constitution.

*Municipal votes.* The power to impose such taxation could not come from, nor be aided by, the municipal votes. The legislature has exactly the same power to impose the taxation without the assent of the municipalities, that it has to permit it with their assent; and the permission granted to the municipalities to vote upon the question was matter of favor and not of right.

*Apportionment of the burden of taxation.* There is no mode in which aid to a railroad running through many municipalities can be given by the taxation of all, consistently with any recognized theory of taxation, without an apportionment of the burden by some rule, or upon some basis, among them all; and this would be impossible under a system by which one township might tax itself ten per cent. of its valuation, another equally benefited by the same object refuse to pay but one, and the third decline altogether to bear any share of the common burden.

*Constitutional construction.* The state is precluded from loaning the public credit to private corporations, and from imposing taxation upon its citizens or any portion thereof in aid of the construction of railroads, by *Art. XIV.,* §§ *7, 8 and 9,* of our constitution. What the state cannot do in this regard directly, it cannot require its townships, cities and villages to do for it.

Constitutions are to be construed as the people construed them in their adoption, if possible; and the public history of the times should be consulted, and should have weight in arriving at that construction.

*Mandamus.* When a municipality, under our railroad aid law (*S. L. 1869, p. 89*), has issued, and deposited, bonds in aid of a railroad with the state treasurer, who, on demand therefor, has declined to deliver the same to the proper authorities of such municipality, a writ of *mandamus* will be granted to compel such delivery.

*Practice in supreme court: Costs.* Where, in such case, there is nothing to indi-
cate that the state treasurer, in awaiting the order of the court before deliv-
ering up the bonds as requested, was not acting in good faith under an honest
misapprehension of his duty, the writ will issue without costs.

*Submitted without argument October 17. Decided October 18.*

Application for *mandamus.*

The opinion contains a full statement of the case.

*J. W. McMath,* for the relator.

*Dwight May, Attorney-General,* and *George V. N. Lothrop,*
for the respondent.

COOLEY, J.

This is an application for a *mandamus* to require the
respondent to deliver to the proper authorities of Bay City
certain bonds which, under the provisions of an act enti-
tled "An act to enable any township, city or village to
pledge its aid, by loan or donation, to any railroad com-
pany now chartered or organized under, and by virtue of,
the laws of the state of Michigan, in the construction of
its road," approved March 22, 1869 (*Sess. L. 1869, p. 89*),
had been issued and deposited in the respondent's office in
aid of the Jackson, Lansing & Saginaw railroad company.
The act in question undertook to empower any such town-
ship or city to pledge its aid to any railroad company
chartered or organized, or that might thereafter be organ-
ized, under the laws of the state, in the construction of the
road of such company, by way of loan or donation, for
such sum or sums, not exceeding ten per centum of the
assessed valuation then last made, of the real and personal
property of such township or city, as a majority of the
electors should, at a meeting called for the purpose, deter-
mine; but with certain provisos which we need not here
recite. Any township or city availing itself of the pro-

visions of the act by voting aid to any railroad company was to issue coupon bonds for the amount of aid granted, which were to be deposited in the office of the treasurer of the state, and by him delivered to such railroad company on a certificate from the governor, showing that the company under the act had become entitled thereto. And the bonds so issued were to be paid as they fell due, from taxes levied upon the taxable property of the municipality issuing the same. The provisions of the act were also extended to incorporated villages.

Under this act, it appears that Bay City voted aid to the Jackson, Lansing & Saginaw railroad company to the amount of one hundred thousand dollars, and issued and deposited its coupon bonds with the state treasurer therefor. We are not advised whether the aid to this extent was to be by way of donation or loan, nor do we regard it as material. The city now desires the return of the bonds, and has made demand therefor upon the treasurer, who has declined to comply therewith.

In *The People v. The Township Board of Salem, 20 Mich., 452*, this court decided that the municipal corporations of this state had no authority in return for, or upon the basis of, the incidental benefits anticipated, to exercise the power of taxation in aid of private corporations building, or proposing to build, railroads to be owned and controlled by their corporators; and that bonds issued by way of such aid, being incipient steps leading to taxation, were therefore unauthorized. We held, moreover, that the taxing power of the state had certain definite limits, one of which was that the tax must be for a public purpose; and that within the meaning of these words as employed to measure the authority of the state to demand and enforce the contributions of its citizens, a railroad in the hands of a private corporation was no more a public purpose than

a manufactory, a newspaper establishment or any other means for the carrying on by individuals of a business which, while private in its nature, nevertheless supplied a public need. Our conclusion, therefore, was, that the legislature could neither compel the taxation of municipalities in aid of railroad companies, nor could it empower them, in order to give such aid, to tax themselves, or to contract indebtedness which must be paid by taxation.

The case mentioned was argued with signal ability, and no legal controversy ever passed upon by the judicial tribunals of the state received a more patient and deliberative hearing or examination. The conclusion reached by the majority of the court, was one which struck at the root of all the legislation of which the act in question was an instance. We found no warrant for it in the constitution. On the contrary, we found that it assumed to take from the citizen his property under a pretense of taxation, but in a case and for a purpose not admitting of an exercise of that power. Our constitution has carefully provided a shield against an invasion of the citizen's right to his property, in the provision which guaranties to every person due process of law.—*Art. VI.*, § *32*. To take a man's property from him under pretense of taxation, for a purpose for which taxation is not admissible, is not due process of law, but is an unlawful confiscation.

The state treasurer, we have no doubt, is acting in good faith in awaiting the order of this court before delivering up the bonds as requested. We assume that he desires the advice of the court as to his duty in the premises, and that it is not his purpose or desire to cause unnecessary trouble, litigation or expense to the municipal authorities. By way of giving such advice, and in order to render any future application of this character unnecessary, we repeat at this time the main point of our previous decision. We based

our judgment upon a ground that we thought could not be misunderstood, and the scope of which could be perfectly comprehended. All our reasoning went to show that when the property of the individual was taken by the state, under the forms of taxation, for the use of a private corporation, and for no other return than the expected incidental benefits, it was in effect taken for a private use, and without compensation.

Another fatal objection to all this legislation, upon which the majority of the court were then agreed, was not fully developed, though referred to when our judgment was declared. As we then stated, the power to impose such taxation, if existing at all, could not come from, and was not aided by, the municipal votes. The legislature would have exactly the same power to impose the taxation without the assent of the municipalities, that it would have to permit it with their assent. If they were allowed to vote upon that question, the permission would be of favor and not of right. The authority must come from the plenary power of the legislature over the whole subject of taxation, which it would exercise upon the municipalities in its discretion. It might seem fairer to the people concerned to permit them to vote upon the question, but in some particulars the very permission would work an injustice. For it needs no argument to show that if a railroad through many municipalities is a public object which may be aided by the taxation of all, there is no mode in which the aid can be given consistent with any recognized theory of taxation without an apportionment of the burden by some rule or upon some basis among them all. This might be done if the legislature prescribed the tax, but it would be impossible under a system under which one township might tax itself ten per cent. of its valuation, another equally benefited by the same object refuse to pay but one, and a third

decline altogether to bear any share of the common burden. The result of legislation like this would be, that the legislature would be requiring these several municipalities to tax themselves for an object common to them all, but without even the pretense of an apportionment of the burden. But we did not find our constitution silent on the subject of such taxation. Our state had once before had a bitter experience of the evils of the government connecting itself with works of internal improvement. In a time of inflation and imagined prosperity, the state had contracted a large debt for the construction of a system of railroads, and the people were oppressed with heavy taxation in consequence. Moreover, for a portion of this debt they had not received what they bargained for, and they did not recognize their legal or moral obligation to pay it. The good name and fame of the state suffered in consequence. The result of it all was that a settled conviction fastened itself upon the minds of our people, that works of internal improvement should be private enterprises; that it was not within the proper province of government to connect itself with their construction or management, and that an imperative state policy demanded that no more burdens should be imposed upon the people by state authority for any such purpose. Under this conviction they incorporated in the constitution of 1850, under the significant title of "Finance and Taxation," several provisions expressly prohibiting the state from being a party to, or interested in, any work of internal improvement, or engaged in carrying on any such work, except in the expenditure of grants made to it; and also from subscribing to, or being interested in, the stock of any company, association or corporation, or loaning its credit in aid of any person, association or corporation.—*Art. XIV.,* §§ *9, 8 and 7.*

All these provisions were incorporated by the people in

the constitution as precautions against injudicious action by themselves, if in another time of inflation and excitement they should be tempted to incur the like burdensome taxation in order to accomplish public improvements in cases where they were not content to wait the result of private enterprise. The people meant to erect such effectual barriers that if the temptation should return, the means of inflicting the like injury upon the credit, reputation and prosperity of the state should not be within the reach of the authorities. They believed these clauses of the constitution accomplished this purpose perfectly; and none of its provisions had more influence in recommending that instrument to the hearty good will of the people.

In process of time, however, a majority in the legislature were found willing, against the solemn warning of the executive, to resort again to the power of taxation in aid of internal improvement. It was discovered that though "the state" was expressly inhibited from giving such aid in any form, except in the disposition of grants made to it, the subdivisions of which the state was composed were not under the like ban. Decisions in other states were found which were supposed to sanction the doctrine that, under such circumstances, the state might do indirectly through its subdivisions what directly it was forbidden to do. Thus a way was opened by which the whole purpose of the constitutional provisions quoted might be defeated. The state could not aid a private corporation with its credit, but it might require each of its townships, cities and villages to do so. The state could not load down its people with taxes for the construction of a public improvement, but it might compel the municipal authorities, which were its mere creatures, and which held their whole authority and their whole life at its will, to enforce such taxes, one by one, until the whole people were bent to the burden.

23 MICH.—64.

Now, whatever might be the just and proper construction of similar provisions in the constitutions of states whose history has not been the same with our own, the majority of this court thought when the previous case was before us, and they still think, that these provisions in our constitution do preclude the state from loaning the public credit to private corporations, and from imposing taxation upon its citizens or any portion thereof in aid of the construction of railroads. So the people supposed when the constitution was adopted. Constitutions do not change with the varying tides of public opinion and desire; the will of the people therein recorded is the same inflexible law until changed by their own deliberative action; and it cannot be permissible to the courts that in order to aid evasions and circumventions, they shall subject these instruments, which in the main only undertake to lay down broad general principles, to a literal and technical construction, as if they were great public enemies standing in the way of progress, and the duty of every good citizen was to get around their provisions whenever practicable, and give them a damaging thrust whenever convenient. They must construe them as the people did in their adoption, if the means of arriving at that construction are within their power. In these cases we thought we could arrive at it from the public history of the times.

The writ of *mandamus* will issue as prayed, but, in this instance, without costs, there being, probably, an honest misapprehension on the part of the treasurer as to his duty.

CAMPBELL, CH. J., and CHRISTIANCY, J., concurred.

GRAVES, J.

I do not deem it necessary to re-discuss the question examined in the *Salem case,* and I, therefore, refrain from

going into it. In the present instance I think the showing sufficient, in view of the decision then made, to warrant the order prayed for, and I accordingly concur in so holding.