## SCHUREMAN v. STATE HIGHWAY COMMISSION.

1. BONDS—CREDIT OF STATE—GENERAL OBLIGATION BONDS.
   The credit of the State is pledged for the payment of general obligation bonds.

2. SAME—CREDIT OF STATE—REVENUE BONDS—SPECIAL OBLIGATION BONDS.
   The credit of the State is not pledged for the payment of revenue bonds and special obligation bonds.

3. SAME—SPECIAL OBLIGATION BONDS—PAYMENT.
   Special obligation bonds are retired from special tax revenues earmarked for that purpose.

4. SAME—REVENUE BONDS—PAYMENT.
   Revenue bonds are retired from the proceeds of the operation of the public structure or enterprise supporting their issuance.

REFERENCES FOR POINTS IN HEADNOTES
[1, 6] 43 Am Jur, Public Securities nad Obligations § 16.
[2–5] 43 Am Jur, Public Securities and Obligations § 285,
[7] 5 Am Jur 2d, Appeal and Error § 1009,

5. Same—Expressway Bonds.

　Provision of Constitution requiring approval of 2/3 of the members-elect of each house of the legislature and of the electors voting at an election on proposal for borrowing of money for specific purposes does not apply to expressway bonds payable from revenues from motor vehicle registration and fuel taxes (Const 1963, art 9, § 15).

6. Same—General Obligation Bonds—Credit of State.

　Limitation on State borrowing power requiring approval of 2/3 of the members-elect of each house of the legislature and of the electors voting at an election on proposal for borrowing money by the State for specific purposes is limited in its application to general obligation bonds pledging the full faith and credit of the State (Const 1963, art 9, § 15).

7. Costs—Public Question—Validity of Bonds.

　No costs are allowed in case to determine validity of bonds to be issued for construction of an expressway, a public question being involved.

Appeal from Court of Appeals, Division 2; McGregor, P. J., T. G. Kavanagh and Quinn, JJ., dismissing action. Submitted January 9, 1966. (Calendar No. 2, Docket No. 51,282.) Decided April 5, 1966.

Original complaint in Court of Appeals by Jeptha W. Schureman for writ of mandamus against State Highway Commission, and Ardale W. Ferguson, Charles H. Hewitt, Wallace D. Nunn, and Richard F. Vanderveen, its members, to test validity of certain highway bonds. Complaint dismissed. Appeal on leave granted to plaintiff. Affirmed.

*Matheny, Schureman & Frakes (John C. Frakes,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso,* Assistant Attorney General, for defendants.

O'Hara, J.   The precise question presented by this case is whether article 9, § 15, of the Michigan Constitution of 1963 applies only to general obligation bonds of this State or to its revenue bonds and special obligation bonds as well.

The involved section provides:

"Sec. 15.   The State may borrow money for specific purposes in amounts as may be provided by acts of the legislature adopted by a vote of two-thirds of the members elected to and serving in each house, and approved by a majority of the electors voting thereon at any general election.   The question submitted to the electors shall state the amount to be borrowed, the specific purpose to which the funds shall be devoted, and the method of repayment."

The bonds here involved are designated "State of Michigan, Detroit Expressway Bonds, Series IV." The bonds, by their terms, are to be paid from the motor vehicle highway fund, the source of which is the proceeds of taxes imposed by State law upon gasoline and other motor fuels and upon motor vehicles registered in the State of Michigan.

Under the settled law of this State, while the Constitution of 1908 was in effect, revenue bonds were not subject to the constitutional borrowing limitations imposed upon general obligation bonds.   See *State Highway Commissioner* v. *Detroit City Controller,* 331 Mich 337, pp 348, 349:

"At the outset, it has long been settled that revenue bonds issued by the State do not fall within the scope of sections 10 and 11   *   *   *   [of article 10 of the Constitution of 1908]."

Revenue bonds and special obligation bonds share an essential distinction from general obligation bonds.   The credit of the State is pledged for the payment of general obligation bonds.   It is not for revenue bonds and special obligation bonds.   Special

obligation bonds are retired from special tax revenues earmarked for that purpose. Revenue bonds are retired from the proceeds of the operation of the public structure or enterprise supporting their issuance.

The bonds here involved are special obligation bonds. Appellant contends that the quoted constitutional provision applies to them. If so, they are unconstitutionally issued since no prior legislative approval thereof was obtained, nor was their issuance submitted to the electorate for approval.

Appellees contend the constitutional limitation applies only to general obligation bonds pledging the credit of the State.

We hold article 9, § 15, does not apply to the special obligation bonds here involved. We hold that the quoted article is limited in its application to general obligation bonds pledging the full faith and credit of the State.

To construe the article in the manner contended for by appellant would require us to disregard the unmistakable intention of the constitutional convention expressed in its official record. When the adoption of the involved article was being debated, the following remarks by the chairman of the committee on finance and taxation were made:[1]

" 'Bear in mind as you consider this that we are talking here only about general obligation indebtedness. This does not apply and is not intended to apply to the various forms of borrowing used in connection with State government but not actually by State government.

" 'The State highway department is borrowing, and the amount is somewhere about $300 million, on tax anticipation bonds. The dormitories at our universities and colleges, with the figure of some-

---

[1] 1 Constitutional Convention 1961, Official Record, p 605.

where about $120 million, are borrowing on revenue bonds.' " (Emphasis supplied.)

Were there any doubt as to whether this were not the clear intention of the convention at the time of adoption, it was dispelled by the confirmatory excerpt repeated in the Address to the People :[2]

"This proposed section deals with long term borrowing such as we used when we paid bonuses to the veterans of 3 wars, when we borrowed for hospital construction, and in the decade of the '20s, *borrowed on full faith and credit* for highway construction." (Emphasis supplied.)

As suggested by the attorney general in his brief, the converse of this construction would create the anomalous situation in which revenue bonds issued by the State would require legislative and electorate approval, while the same type of bonds issued by counties and other subordinate units of government would be exempt therefrom.

In addition to the foregoing indicia of the intent of the article, the virtually unanimous holdings of the appellate courts of the other States comport with this interpretation of similar constitutional limitations. We so held when the question was presented under the Constitution of 1908, and we find nothing in the record of the convention which drafted the Constitution of 1963 which would suggest a contrary intention or meaning. The prior holding was :[3]

" 'The overwhelming weight of judicial opinion in this country is to the effect that bonds,   *   *   *   issued by states, cities, counties,   *   *   *   if such

[2] Constitutional Convention 1961, Official Record, pp 603, 3401.

[3] *State Highway Commissioner* v. *Detroit City Controller,* 331 Mich 337, at page 349, quoting from *California Toll Bridge Authority* v. *Wentworth,* 212 Cal 298 (298 P 485).

particular bonds or obligations are secured by and payable only from the revenues realized from a particular utility or property, acquired with the proceeds of the bonds or obligations, do not constitute debts of the particular state, * * * within definition of 'debts' as used in the constitutional provisions of states having limitations as to the incurring of indebtedness.' "

This general rule is repeated in the discussion of the topic in American Jurisprudence :[4]

"Similarly, it has been held that bonds issued by a state board payable solely out of proceeds of political subdivisions pledged as security are not within constitutional provisions requiring the consent of the electors of the state before state bonds or evidences of indebtedness pledging the faith and credit of the state or any of its revenues are issued, inasmuch as such bonds are not part of the state debt and are not the direct obligations of the state. Where the bonds must be paid out of the proceeds arising from pledged securities, and there is no other method or provision for the repayment of such funds as may be borrowed upon these bonds, so that no holder of the bonds can in good faith, at any time, legally assert any claim against the state for their payment, upon default of the securities pledged therefor, the bonds are not state bonds."

We find the majority rule sound and persuasive and align ourselves therewith.

For the reasons hereinbefore set forth, the order of the Court of Appeals dismissing the complaint for a writ of superintending control in the nature of mandamus to compel the State highway commission to submit the question of whether the bonds here involved should be issued to the legislature and

---

[4] 43 Am Jur, Public Securities and Obligations, § 19, p 285. See, also, 81 CJS, States, § 181, p 1242.

the electorate is affirmed.  No costs, a public question.

DETHMERS, KELLY, SOURIS, SMITH, and ADAMS, JJ., concurred with O'HARA, J.

T. M. KAVANAGH, C. J., and BLACK, J., concurred in result.