ADVISORY OPINION ON CONSTITUTIONALITY OF 1976 PA 295,
1976 PA 297

Docket No. 59096. Argued June 10, 1977 (Calendar No. 24).—Decided
    November 7, 1977.

    The Supreme Court granted a request by the Governor to answer
        questions on the constitutionality of 1976 PA 295, the State
        Transportation Preservation Act, and 1976 PA 297, concerning
        the General Transportation Fund, the transportation council,
        and the issuance of bonds and notes for public transportation
        services (Enrolled Senate Bills 1385 and 1387). *Held:*

        1. The determination of what constitutes a public purpose
    under the constitutional ban on state involvement in internal
    improvements is primarily the responsibility of the Legislature,
    and the concept of public purpose has been construed quite
    broadly. The language of Const 1963, art 3, § 6, reflects the
    decision of the delegates to the 1961 constitutional convention
    that it was better to empower the Legislature to decide when
    the state should be involved in works of public internal im-
    provement as the public need dictated, rather than to list
    specific exceptions to a continuing constitutional ban on such
    internal improvements.

        2. The Legislature found that the undertaking of the plan-
    ning, development, acquisition and operation of rail, intercity
    bus and ferry services was in the best interest of the state and
    a valid public purpose, and declared that the preservation of
    abandoned railroad rights of way for future rail use and their
    interim use as public trails was a valid public purpose. On the
    basis of those fully justifiable conclusions, the Legislature could
    authorize state involvement in these undertakings without
    offending Const 1963, art 3, § 6.

        3. The fact that 1976 PA 295 provides for public grants to
    private businesses does not defeat the legislative determination
    that such grants are necessary to achieve a valid public pur-

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 16 Am Jur 2d, Constitutional Law § 85.
[6] 16 Am Jur 2d, Constitutional Law § 127.
[7–12] 64 Am Jur 2d, Public Securities and Obligations § 413 *et seq.*
[13, 14] 16 Am Jur 2d, Constitutional Law § 111.

pose. Analogous "subsidies" to private business have been provided in other legislation, for example through "forgiveness" of taxes otherwise due from private businesses. The Legislature was acting within its power when it determined that these grants may be necessary to provide a comprehensive and integrated system of transportation services in the state and that they constitute a valid public purpose.

4. Revenue bonds and self-liquidating bonds do not constitute obligations of the state, and since there is no granting of the state's credit for such bonds they do not violate Const 1963, art 9, § 18. Under 1976 PA 295, § 12, the State Highway Commission's authority to guarantee any loans is limited to the extent of the funds appropriated for that purpose. The only limits on funds appropriated for that purpose are found in 1976 PA 297, which governs the authority of the Department of State Highways and Transportation, under the supervision of the State Highway Commission, to borrow funds for public transportation purposes. Any guarantee of a loan under 1976 PA 295 can avoid offending Const 1963, art 9, § 9 only if the provisions for repayment of that guarantee are made according to the terms of 1976 PA 297. The notes and bonds authorized by 1976 PA 297 are special obligation bonds and do not pledge the credit of the state as long as the source of their payment is strictly limited to the proceeds of constitutionally restricted highway revenues derived from taxes on gasoline and other constitutionally restricted highway taxes as the Legislature directs, and as long as no pledge of the state's full faith and credit is made on the guarantee.

5. At least a portion of the monies to be deposited in the general transportation fund represent the proceeds of taxes imposed on motor vehicle fuels, which under Const 1963, art 9, § 9 must be used exclusively for highway purposes "as defined by law". When the Legislature defined public transportation services as "highway purposes" under this provision of the Constitution, it was acting within its authority and the proceeds of these constitutionally restricted taxes may properly be used for the purposes of 1976 PA 297. Support for this broad legislative definition of "highway purposes" is found in case law and the general highway law.

6. The notes and bonds authorized under 1976 PA 297 are designated as "revenue" notes or bonds which are payable *solely* from the proceeds of constitutionally restricted highway revenues derived from taxes upon gasoline and other restricted highway taxes as the Legislature directs by law. The notes and bonds will not be payable solely from the revenue received

from the operation of the public transportation services. Consequently, they cannot be said to be revenue notes and bonds. However, despite their misnomer, they appear to be, in fact, special obligation bonds. These notes and bonds do not pledge the full faith and credit of the state, nor of any eligible authority or governmental agency. The only revenues in the general transportation fund that may be pledged for payment of these notes and bonds, without offending the Constitution, are those revenues from constitutionally restricted sources.

Justice Levin concurred in the latter parts of the Court's opinion holding that the public transportation purposes of 1976 PA 297 are highway purposes within the meaning of the Constitution, and that the state will not violate the Constitution if it borrows money and issues bonds or notes pursuant to PA 297. He further agreed with the holding that the bonds authorized by PA 297 are special obligation bonds and that therefore the state would not, by their issuance, become a party to, or financially interested in, a work of internal improvement. However, until the Legislature actually provides funding or state credits, the provisions of 1976 PA 295 regarding other financing are entirely anticipatory and do not constitute an enactment on which the Court may give an advisory opinion. He would defer reaching the question whether the transportation programs of PA 295 constitute "public" internal improvements until the state is actually about to become involved and the Court is apprised of the manner and extent of its involvement.

1976 PA 295 and 1976 PA 297 declared constitutional.

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—PUBLIC INTERNAL IMPROVEMENTS—PUBLIC PURPOSE.

The determination of what constitutes a public purpose for an "internal improvement" under the Constitution is primarily the responsibility of the Legislature, and the concept of public purpose has been broadly construed (Const 1963, art 3, § 6).

2. CONSTITUTIONAL LAW—PUBLIC INTERNAL IMPROVEMENTS—PUBLIC PURPOSE.

The constitutional language forbidding the state to participate in works of internal improvement except for public internal improvements provided by law reflects the decision that it was better to empower the Legislature to decide when the state should be involved in works of public internal improvement as the public need dictated, rather than to list specific exceptions

to a continuing constitutional ban on internal improvements (Const 1963, art 3, § 6).

3. CONSTITUTIONAL LAW—PUBLIC INTERNAL IMPROVEMENTS—STATE TRANSPORTATION PRESERVATION ACT.

The Legislature, when it found that undertaking the planning, development, acquisition and operation of rail, intercity bus and ferry services was in the best interest of the state and a valid public purpose, and declared that the preservation of abandoned railroad rights of way for future rail use and their interim use as public trails was a valid public purpose, could authorize state involvement in those services without offending the Constitution (Const 1963, art 3, § 6; 1976 PA 295, § 1).

4. CONSTITUTIONAL LAW—PUBLIC INTERNAL IMPROVEMENTS—STATE TRANSPORTATION PRESERVATION ACT—GRANTS TO PRIVATE CARRIERS.

The fact that the State Transportation Preservation Act provides for public grants to private railroads and carriers does not defeat the legislative determination that such grants are necessary to achieve a valid public purpose, unless all similar public grants to private businesses, such as statutory provisions for forgiveness of taxes, are deemed to violate the Constitution (Const 1963, art 3, § 6; 1976 PA 295).

5. CONSTITUTIONAL LAW—PUBLIC INTERNAL IMPROVEMENTS—STATE TRANSPORTATION PRESERVATION ACT—GRANTS TO PRIVATE CARRIERS.

The Legislature was acting within its power when it determined that public grants to private railroads and carriers under the State Transportation Preservation Act may be necessary to provide a comprehensive and integrated system of transportation services in the state and that they constitute a valid public purpose (Const 1963, art 3, § 6; 1976 PA 295).

6. CONSTITUTIONAL LAW—BORROWING—LIMITATIONS—REVENUE BONDS.

The Supreme Court has held that revenue bonds and self-liquidating bonds do not constitute obligations of the state; therefore such bonds do not violate the Constitution's borrowing limitations (Const 1963, art 9, § 18).

7. CONSTITUTIONAL LAW—BORROWING—STATE TRANSPORTATION PRESERVATION ACT.

Any guarantee of a loan under the State Transportation Preservation Act can avoid offending the constitutional limitation on pledging the state's credit only if the provisions for repayment

of that guarantee are made according to the terms of the act establishing the General Transportation Fund, that is, are strictly limited to repayment from the constitutionally restricted revenues placed in that fund, and as long as no pledge of the state's full faith and credit is made on the guarantee (Const 1963, art 9, § 18; 1976 PA 295, § 12; 1976 PA 297).

8. CONSTITUTIONAL LAW—BORROWING—LIMITATIONS—PLEDGE OF CREDIT—GENERAL TRANSPORTATION FUND ACT.

The notes and bonds authorized under the act establishing the General Transportation Fund are special obligation bonds and do not pledge the credit of the state, as long as their payment is limited to the proceeds of the General Transportation Fund derived from taxes on gasoline and other constitutionally restricted highway taxes as the Legislature directs by law (Const 1963, art 9, § 18; 1976 PA 297).

9. HIGHWAYS—TAXATION—GASOLINE TAX—CONSTITUTIONAL LAW—WORDS AND PHRASES.

The Legislature was acting within its authority when it defined public transportation services as "highway purposes" under the constitutional limitation on the use of specific tax revenues; the proceeds of constitutionally restricted motor fuel and motor vehicle taxes may properly be used for these highway purposes as defined by the act establishing the General Transportation Fund (Const 1963, art 9, § 9; 1976 PA 297, § 10c[8]).

10. HIGHWAYS—WORDS AND PHRASES.

The term "highway" has been characterized by the Supreme Court as the generic name for all kinds of public ways, including county and township roads, streets and alleys, turnpikes and plank roads, railroads and tramways, bridges, ferries, canals and navigable rivers; in short, every public thoroughfare is a highway.

11. HIGHWAYS—PUBLIC TRANSPORTATION—GENERAL TRANSPORTATION FUND ACT—REVENUE BONDS.

The notes and bonds to be issued under the authority of the act creating the General Transportation Fund for public transportation purposes will not be payable solely from the revenues received from the operation of the public transportation services, and consequently they cannot properly be said to be revenue bonds and notes (Const 1963, art 9, § 15; 1976 PA 297).

12. HIGHWAYS—PUBLIC TRANSPORTATION—GENERAL TRANSPORTATION FUND ACT—SPECIAL OBLIGATION BONDS.

The notes and bonds authorized under the act creating the

General Transportation Fund are special obligation bonds and the constitutional limitation on borrowing by the state does not apply to them because they do not pledge the full faith and credit of the state and they are payable solely from tax revenues constitutionally designated for highway purposes as defined by law (Const 1963, art 9, § 15; 1976 PA 297).

OPINION CONCURRING IN PART BY LEVIN, J.

13. CONSTITUTIONAL LAW—BORROWING—LIMITATIONS—STATE TRANSPORTATION PRESERVATION ACT—ADVISORY OPINION.

*Until the Legislature actually provides other funding or state credits, provisions of the State Transportation Preservation Act regarding other financing are entirely anticipatory and do not constitute an enactment on which the Supreme Court may give an advisory opinion (Const 1963, art 3, § 8; 1976 PA 295).*

14. CONSTITUTIONAL LAW—PUBLIC INTERNAL IMPROVEMENTS—STATE TRANSPORTATION PRESERVATION ACT.

*The question whether the transportation programs of the State Transportation Preservation Act constitute "public" internal improvements should be deferred until the state is actually about to become involved and the Court is apprised of the manner and extent of its involvement (Const 1963, art 3, § 6; 1976 PA 295).*

*Frank J. Kelley,* Attorney General, and *Robert A. Derengoski,* Solicitor General.

*Louis J. Caruso, Janis Meija,* and *Francis J. Carrier,* Assistants Attorney General, in support of constitutionality.

*Richard R. Roesch* and *Lawrence W. Morgan,* Assistants Attorney General, in opposition to constitutionality.

Amici Curiae:

Aggregate Carriers of Michigan, Inc., Central Transport, Inc., Direct Transit Lines, Inc., Key Line Freight, Inc., R-W Service System, Inc., St. Louis Freight Lines, Inc., Geo. F. Alger Co., L. J.

Beal & Son, Inc., Hess Cartage Company, James House & Sons Cartage, Mackinaw Company, Michigan Transportation Co., N & K Cartage Co., Rex Transportation Co., and Wemco Company, by *Sullivan, Leavitt & Bileti.*

County Road Association of Michigan and Michigan Townships Association, by *Downs, Edwards & Pirich (John Cushman,* General Counsel, Wayne County Road Commission, and *L. W. McEntee,* General Counsel, Oakland County Road Commission, of counsel).

Michigan Teamsters Joint Council No. 43, by *Lippitt, Harrison, Perlove, Friedman & Zack.*

Michigan Trucking Association, by *Clark, Klein, Winter, Parsons & Prewitt* (by *H. William Butler, L. A. Hinds* and *Joseph J. Ayaub).*

Southeastern Michigan Transportation Authority; Area Agency on Aging of Western Michigan, Inc., Capital Area Rail Council, City of Detroit, Concerned Citizens Council, Inc., East Michigan Environmental Action Council, Human Relations Commission of City of Highland Park, Macomb Essential Transportation Service, Michigan Public Transit Association, Michigan Student Environmental Confederation, Inc., Michigan U.A.W. Community Action Program, Public Interest Research Group in Michigan, and West Michigan Environmental Action Council, by *Dickinson, Wright, McKean, Cudlip & Moon* (by *George E. McKean, John R. Axe,* and *Julia D. Darlow; Walter H. Clements,* of counsel).

United Transportation Union, Michigan State A. F. L.-C. I. O., Brotherhood of Railway, Steam-

ship, and Airline Clerks, Brotherhood of Maintenance Way Employees, and Michigan Rail Action Association, by *James F. Schouman* and *Jeffery Zeh,* General Counsel of Maintenance of Way Employees.

RYAN, J. The Court has been asked by the Governor for an advisory opinion on the constitutionality of 1976 PA 295; MCLA 474.51 *et seq.;* MSA 22.180(21) *et seq.,* and 1976 PA 297; MCLA 247.660b *et seq.;* MSA 9.1097(10c) *et seq.*

1976 PA 295 (hereafter PA 295) is labelled the State Transportation Preservation Act of 1976 and is designed to improve and maintain transportation services in Michigan.

1976 PA 297 (hereafter PA 297) was added to 1951 PA 51; MCLA 247.651 *et seq.;* MSA 9.1097(1) *et seq.* Broadly speaking, the portions of this act which are presently under scrutiny provide for the establishment and administration of the General Transportation Fund, the establishment and functions of the transportation council, conditions for grants and the issuance of bonds and notes for public transportation services.

The Court has agreed to provide an opinion advising whether PA 295 violates either Const 1963, art 3, § 6 which prohibits state involvement in internal improvements which are not public internal improvements, or Const 1963, art 9, § 18 which prohibits the state from granting or pledging its credit to or for another, except as authorized in the Constitution. In addition, the Court has agreed to provide an opinion advising whether PA 297 violates Const 1963, art 9, § 9 which requires that the proceeds of all specific taxes, other than general sales and use taxes and regulatory fees, imposed on motor vehicle fuels and on regis-

tered motor vehicles, be used exclusively for highway purposes as defined by law, and further advising whether the issuance of notes and bonds under PA 297, to be repaid from gasoline tax revenues in the General Transportation Fund, violates Const 1963, art 9, § 9 or the state borrowing provisions of Const 1963, art 9, § 15.

## I. 1976 PA 295 AND CONST 1963, ART 3, § 6

Const 1963, art 3, § 6 provides:

"The state shall not be a party to, nor be financially interested in, any work of internal improvement, nor engage in carrying on any such work, except for public internal improvements provided by law."

PA 295, among its provisions, empowers the State Highway Commission to exercise the powers necessary to obtain qualification on behalf of the state for rail service continuation contractual grants pursuant to the Federal Regional Rail Reorganization Act of 1973, 45 USC 701 et seq., (§ 4); to provide financial assistance for the operation and maintenance of a railroad within the state as provided by relevant Federal legislation (§ 5); to acquire rail property or other facilities necessary for the operation of a railroad and to acquire a portion or portions of a railroad right of way (§ 6); to acquire railroad rights of way approved for abandonment within the state by purchase or the exercise of eminent domain (§ 8); to co-operate with other states in connection with the purchase of rail property within the state and to acquire trackage rights and rail property in other states (§ 9); to acquire abandoned properties for other specified public bodies; to preserve, use and dispose of, grant the right to occupy, develop or lease

abandoned rail property (§ 10); to apply for an acquisition or modernization loan, or a guarantee of a loan under certain Federal programs (§ 12); to purchase intercity bus equipment and related station and servicing facilities, ferry equipment, dock, port, and water equipment servicing facilities (§ 14); to spend sums for the modernization, rehabilitation, rebuilding and relocation of rail property, and perform or contract for maintenance and improvements on rail property, whether such property is owned by the state or by a private carrier (§ 15); to contract for the provision of rail, intercity bus or ferry service (§ 16); to provide financial assistance for the continuation and improvement of operations, and the maintenance of equipment and support facilities of intercity bus and ferry carriers (§ 17); and, with the approval of the Michigan Public Service Commission, to contract for substitute services and relocation assistance within the state to serve shippers and communities affected by the termination of rail freight services (§ 18).

In enacting the statute, the Legislature found:

"(2) There exists a need to provide authorization for financial assistance for the capital improvement, maintenance, and operation of rail, intercity bus, and ferry services in this state. To undertake the planning, development, acquisition, and operation of these services is in the best interest of the state and is a valid public purpose.

"(3) The preservation of abandoned railroad rights of way for future rail use and their interim use as public trails is declared to be a public purpose." MCLA 474.51; MSA 22.180(21).

Initially, it is assumed that rail, bus and ferry services are works of internal improvement, for otherwise there would be no constitutional infir-

mity under Const 1963, art 3, § 6. The question for
the Court then is whether this statute impermissi-
bly empowers the state to become a party to, and
financially interested in, such works which are not
*public* internal improvements.

At the outset it should be noted that this Court
has recognized that the determination of what
constitutes a public purpose is primarily the re-
sponsibility of the Legislature, and that the con-
cept of public purpose has been construed quite
broadly in Michigan. *Advisory Opinion on Consti-
tutionality of 1975 PA 227 (Questions 2–10),* 396
Mich 465, 495–498; 242 NW2d 3 (1976). For exam-
ple, this Court has found that promoting the sale
of Michigan apples,[1] the payment of dues by a city
for a membership in the Michigan Municipal
League,[2] the construction of a port marina by a
city,[3] the issuance of bonds by a city to finance the
construction of privately owned industrial build-
ings,[4] the construction of a sports arena,[5] public
financing of gubernatorial elections[6] and the crea-
tion of a state authority authorized to make loans
directly to, or guarantee loans made to, private
business enterprises for financing job development
projects[7] may all serve a valid public purpose.

Two major arguments are presented to support
the contention that the activities authorized under

[1] *Miller v Michigan State Apple Commission,* 296 Mich 248; 296
NW 245 (1941).

[2] *Hays v Kalamazoo,* 316 Mich 443; 25 NW2d 787 (1947).

[3] *Gregory Marina, Inc v Detroit,* 378 Mich 364; 144 NW2d 503
(1966).

[4] *Gaylord v Gaylord City Clerk,* 378 Mich 273; 144 NW2d 460
(1966).

[5] *Alan v Wayne County,* 388 Mich 210; 200 NW2d 628 (1972).

[6] *Advisory Opinion on Constitutionality of 1975 PA 227 (Questions
2–10),* 396 Mich 465; 242 NW2d 3 (1976).

[7] *Advisory Opinion on Constitutionality of 1975 PA 301,* 400 Mich
270; 254 NW2d 528 (1977).

PA 295 are not similar, permissible works of public internal improvement: 1) that, historically, the constitutional ban on state involvement in internal improvements has prohibited involvement in railroads and 2) that the provisions for direct grants to *private* rail companies under PA 295 do not constitute expenditures for public internal improvements.

### 1) A Brief History of Article 3

Michigan's first Constitution stated that internal improvement was to be encouraged by the state and indicated that the Legislature had the authority to appropriate funds for such purpose. Const 1835, art 12, § 3. Under this authority, the state incurred large debts for the construction of railroads and canals. The public's reaction to the tax burdens imposed by these debts prompted a ban on state involvement in works of internal improvement in the Constitution of 1850, art 14, § 9. This ban was continued in the Constitution of 1908, art 10, § 14, although exceptions were made from time to time in both the 1850 and the 1908 Constitutions to permit the state to become involved in certain specified works of internal improvement. However, none of these exceptions allowed the state to once again become involved in the development of the state's railroad system.

At the Constitutional Convention of 1961, the committee on legislative powers first proposed to retain the language of the 1908 Constitution, as amended, with an additional provision giving the Legislature the authority to empower political subdivisions of the state to engage in those works of public internal improvement prohibited to the state. 2 Official Record, Constitutional Convention 1961, pp 2309–2310. After considerable debate on

this proposal, the abbreviated wording of the 1963 Constitution, noted above, was adopted to make "it clear that the state 'may not be a party to' nor 'financially interested' in internal improvements other than those of a public nature and by authorization of law". 2 Official Record, Constitutional Convention 1961, "Address to the People", p 3368.

The debate of the delegates to the 1961 convention indicates they were well aware of the historic basis that prompted this constitutional ban on state involvement in works of internal improvement, yet they did not specifically prohibit state involvement in railroads. The constitutional language chosen reflects their ultimate decision that it was better to empower the Legislature to decide when the state should be involved in works of public internal improvement as the public need dictated, rather than to list specific exceptions to a continuing constitutional ban on such internal improvements.

It should not be assumed that the Legislature, in adopting PA 295, was any less mindful of the lessons of history when it found in 1976 that undertaking the planning, development, acquisition and operation of rail, intercity bus and ferry services was in the best interest of the state and a valid public purpose, and declared that the preservation of abandoned railroad rights of way for future rail use and their interim use as public trails was a valid public purpose. MCLA 474.51; MSA 22.180(21).

Having reached the fully justifiable conclusion that these transportation services serve a valid public purpose, it seems clear that the Legislature could authorize state involvement in those services without offending Const 1963, art 3, § 6.

## 2) Grants to Private Railroads

It has also been argued that the provisions of PA 295 authorizing the highway commission to make direct grants to private railroads and carriers constitute state involvement in works of internal improvement that are clearly not public and consequently are in violation of Const 1963, art 3, § 6.

This argument has some facial appeal, since none of the activities this Court has heretofore found may constitute a public purpose have entailed direct grants of public money to private businesses, as permitted under PA 295. However, analogous "subsidies" to private business have been provided in other state legislation when the Legislature apparently found that such "subsidies" would meet a valid need. For example, under the plant rehabilitation and industrial development act, MCLA 207.551 *et seq.;* MSA 7.800(1) *et seq.,* certain local units of government may exempt new or rehabilitated industrial facilities from certain property taxes and impose a lower specific tax on the property for a period of 12 years when the legislative body of the local unit of government finds that completion of the facility is likely to create or retain employment in the affected community. Similarly, the commercial housing development act, MCLA 207.601 *et seq.;* MSA 7.792(1) *et seq.,* permits certain local governmental units to exempt new commercial housing facilities from real and personal property taxes for a period of 12 years when the legislative body of the local unit of government finds that completion of the facility is likely to create or retain employment in the affected community. The Single Business Tax Act contains provisions allowing certain businesses to use an alternative adjusted tax base that results in

those businesses paying a lower tax than would be due otherwise. MCLA 208.1 *et seq.;* MSA 7.558(1) *et seq.* These statutory provisions for "forgiveness" of taxes otherwise due from private business enterprises are, in effect, indirect subsidies to private business and may be said to parallel the grants of public funds to private railroads permitted under PA 295. Unless all similar public grants to private businesses are to be deemed to violate Const 1963, art 3, § 6, the fact that PA 295 provides for public grants to private businesses should not defeat the legislative determination that such grants are necessary to achieve a valid public purpose.

Our attention has been invited to several decisions of this Court in which it was held that grants to private railroads did not constitute a public purpose. *People ex rel Detroit & H R Co v Salem Twp Board,* 20 Mich 452 (1870); *People ex rel Bay City v State Treasurer,* 23 Mich 499 (1871); *Attorney General ex rel Brotherton v Detroit Common Council,* 148 Mich 71; 111 NW 860 (1907). However, those cases were decided under the constitutional ban on involvement in internal improvements found in Const 1850, art 14, § 9, as amended, which banned involvement in all works of internal improvement with certain specific exceptions. That language has been changed in the Constitution we construe today to allow the state to be involved in "public internal improvements provided by law".

In view of this manifestly broader constitutional language and the broad interpretation of the term "public purpose" which this Court has upheld, it appears that the Legislature was acting within its power when it determined that these grants may be necessary to provide a comprehensive and integrated system of transportation services in the

state and that they constitute a valid public purpose.

## II. 1976 PA 295 AND CONST 1963, ART 9, § 18

Const 1963, art 9, § 18 provides in pertinent part as follows:

"The credit of the state shall not be granted to, nor in aid of any person, association or corporation, public or private, except as authorized in this constitution."

In *Advisory Opinion re Constitutionality of 1966 PA 346,* 380 Mich 554, 564; 158 NW2d 416 (1968), this Court said:

"The purpose of this provision is to make certain that the State, which itself cannot borrow, except as authorized, does not accumulate unauthorized debts by indorsing or guaranteeing the obligations of others."

Under this test it has been held that revenue bonds and self-liquidating bonds do not constitute obligations of the state, and since there is no granting of the state's credit for such bonds, they do not violate Const 1963, art 9, § 18. *Advisory Opinion re Constitutionality of 1966 PA 346, supra,* 565–567; *State Highway Commissioner v Detroit City Controller,* 331 Mich 337, 356–357; 49 NW2d 318 (1951).

Section 12 of PA 295, MCLA 474.62; MSA 22.180(32), is the only provision of this statute that appears to empower the State Highway Commission to grant the credit of the state to, or in aid of, others, and which, consequently, holds the potential for running afoul of the prohibition in Const 1963, art 9, § 18. Section 12 provides:

"The [state highway] commission may apply for an
acquisition and modernization loan, *or a guarantee of a*
*loan,* pursuant to section 403 of the federal act, being
45 U. S. C. section 763, or other federal programs within
the limit of funds appropriated for this purpose." (Em-
phasis added.)

The commission's authority to obtain or guaran-
tee any loan under this section is limited to the
extent of the funds appropriated for that purpose.
However, a scrutiny of the other provisions of PA
295 fails to reveal any limit in the statute on the
funds appropriated for that purpose.

Consequently, we look for applicable limits to
the provisions of PA 297 which govern the author-
ity of the Department of State Highways and
Transportation, under the supervision of the State
Highway Commission, to borrow funds for public
transportation purposes. Under the provisions of
PA 297, as construed in part IV of this opinion,
*infra,* we hold that any guarantee of a loan under
PA 295 can avoid offending Const 1963, art 9, § 18
only if the provisions for repayment of that guar-
antee are made according to the terms of PA 297.

We conclude, *infra,* that the notes and bonds
authorized under PA 297 are special obligation
bonds and do not pledge the credit of the state, as
long as their payment is strictly limited to the
proceeds of constitutionally restricted highway
revenues placed by law in the General Transporta-
tion Fund, being derived from taxes on gasoline
and other constitutionally restricted highway
taxes as the Legislature directs by law. With anal-
ogous reasoning we are of the opinion that with
regard to § 12 of PA 295, any guarantee of a loan
authorized thereunder will not offend the prohibi-
tion against granting the state's credit contained
in Const 1963, art 9, § 18 as long as the provisions

for repayment of any such guarantee are strictly limited in accordance with the full provisions of PA 297 to the constitutionally restricted revenues placed in the General Transportation Fund, and as long as no pledge of the state's full faith and credit is made on the guarantee.

III. 1976 PA 297 AND CONST 1963, ART 9, § 9

Const 1963, art 9, § 9 provides:

"All specific taxes, except general sales and use taxes and regulatory fees, imposed directly or indirectly on fuels sold or used to propel motor vehicles upon highways and on registered motor vehicles shall, after the payment of necessary collection expenses, be used exclusively for highway purposes as defined by law."

Section 10c(8) of PA 297, MCLA 247.660c(8); MSA 9.1097(10d)(8), provides:

"(8) 'Public transportation', 'public transportation service', or 'public transportation purpose' means the movement of people and goods by publicly or privately owned water vehicle, bus, railroad car, rapid transit vehicle, taxicab, or other conveyance which provides general or special service to the public, but not including school buses or charter or sightseeing service. Public transportation or public transportation services as defined in this subdivision are declared by law to be highway purposes within the meaning of section 9 of article 9 of the state constitution of 1963."

Section 10b of PA 297, MCLA 247.660b; MSA 9.1097(10c), establishes the General Transportation Fund and provides for an annual appropriation to that fund of a portion of the net revenues of the tax on gasoline and liquefied petroleum gas.

Sections 10d and 10e of PA 297, MCLA 247.660d,

247.660e; MSA 9.1097(10e), 9.1097(10f), govern the use of the General Transportation Fund and provide that the fund shall be used for public transportation purposes including the making of grants for public transportation services and the paying of debt service on notes and bonds sold for public transportation purposes.

Because at least a portion of the monies to be deposited in the General Transportation Fund represent the proceeds of taxes imposed on motor vehicle fuels, the Court must determine whether the public transportation purposes of PA 297 are highway purposes within the limits of Const 1963, art 9, § 9. A review of the debate concerning this provision during the constitutional convention and a review of the definition of the term "highway" as employed in our cases and legislative enactments is of assistance in reaching a decision on this question.

## 1) The Constitutional Convention

In the course of the delegates' consideration of this constitutional provision, a significant amount of discussion focused on the meaning of the words "as defined by law". The phrase was proposed as an addition to the then existing language of Const 1908, art 10, § 22 which governed the earmarking of gasoline and weight taxes for highway purposes, prior to the adoption of the 1963 Constitution.

In the course of the debate, the chairman of the committee charged with the responsibility for working on this provision indicated the committee felt that, rather than write a specific definition of highway purposes in the constitution, it was better to leave the definition of highway purposes to the Legislature so that as needs changed the definition

could change. In response to a question as to whether the Legislature could divert these funds to municipalities to assist them with their mass transit systems under this language, the chairman responded that such action might be questionable but that the Legislature had not taken that approach in the past. 1 Official Record, Constitutional Convention 1961, p 785.

This response was less than conclusive on the issue of assistance to mass transit systems, but no further discussion was had on this question.

Later, an amendment was offered to strike the words "as defined by law"; however, the proposed amendment was defeated after additional discussion made it clear to the delegates that this language would leave the determination of "highway purposes" to the Legislature rather than to the judiciary. 2 Official Record, Constitutional Convention 1961, pp 2632–2634. The convention comments on Const 1963, art 9, § 9 contained in the "Address to the People" indicated this to be the understanding:

"This is a revision of Sec. 22, Article X of the present constitution and retains earmarking of gas and weight taxes for highway purposes. The only significant change is accomplished through the addition of the words 'as defined by law' following 'highway purposes' at the conclusion of the section. *This gives the legislature power to define and limit the meaning of the term 'highway purposes'.*" 2 Official Record, Constitutional Convention 1961, p 3400. (Emphasis added.)

This history and comment support a finding that when the Legislature defined public transportation services as highway purposes within this constitutional provision, it was acting within its authority and the proceeds of these constitutionally re-

stricted taxes may properly be used for these
highway purposes as defined by law.

### 2) Definition of the Term "Highway"

Further support for this broad legislative defini-
tion of "highway purposes" can be found upon
review of the cases and statutes in which the term
"highway" has been defined.

This Court has twice cited with approval a defi-
nition of the term highway found in Elliott on
Roads and Streets, § 1:

"The term 'highway' is the generic name for all kinds
of public ways, including county and township roads,
streets and alleys, turnpikes and plank roads, railroads
and tramways, bridges and ferries, canals and navigable
rivers. In short, every public thoroughfare is a high-
way."[8]

This Court has also defined highway as a way
over which the public has a common and equal
right to travel[9] and as a public way for the use of
the public in general for passage and traffic.[10]

Although two early Michigan cases found that
railroads were not highways,[11] those cases must be

---

[8] In *In re Petition of Carson,* 362 Mich 409, 412; 107 NW2d 902
(1961), this Court affirmed a denial of a petition to vacate a road in a
platted subdivision used primarily as a footpath. This Court found
that the lower court did not err in holding that this use as a footpath
constituted a use as a roadway.

In *Burdick v Harbor Springs Lumber Co,* 167 Mich 673, 679; 133
NW 822 (1911), this Court found a private way to timberland over
adjoining premises was primarily a way of convenience for a private
individual to the exclusion of others and did not constitute a public
highway.

[9] *People v Jackson,* 7 Mich 432, 446 (1859).

[10] *Detroit International Bridge Co v American Seed Co,* 249 Mich
289, 295; 228 NW 791 (1930).

[11] *Williams v Michigan Central R Co,* 2 Mich 259, 262 (1851); *People
ex rel Detroit & H R Co v Salem Twp Board,* 20 Mich 452, 478–479
(1870).

read in the context of their time, when Michigan was still recovering from the heavy debts it had incurred on behalf of the development of railroads and canals in the state. Further, those cases cannot be read as standing for the proposition that railroads cannot be defined by law as highway *purposes,* which implies a broader definition than the use of the term, highway, standing alone.

A broad definition of the term highway can likewise be found in Michigan's general highway law. Under that statute, ferry landings are deemed to be public highways, MCLA 233.14; MSA 9.390, and penalties are provided for the willful obstruction of the navigation of any river or stream declared a public highway. MCLA 230.4; MSA 9.334.

These broad definitions of the term highway adopted by the Legislature and this Court are consistent with the legislative determination in PA 297 that public transportation services are highway purposes.

Since the Legislature was acting within its constitutional powers when it defined highway purposes as including public transportation services, the appropriation of restricted tax revenues under PA 297 to the General Transportation Fund does not violate Const 1963, art 9, § 9.

IV. 1976 PA 297 AND CONST 1963, ART 9, §§ 9 AND 15

Const 1963, art 9, § 15 provides:

"The state may borrow money for specific purposes in amounts as may be provided by acts of the legislature adopted by a vote of two-thirds of the members elected to and serving in each house, and approved by a majority of the electors voting thereon at any general elec-

tion. The question to be submitted to the electors shall state the amount to be borrowed, the specific purpose to which the funds shall be devoted, and the method of repayment."

Const 1963, art 9, § 9 is quoted above in part III of this opinion.

The task of the Court is to determine whether the state will violate either of these provisions if it borrows money and issues bonds or notes pursuant to §§ 10b and 10e of 1951 PA 51, as re-enacted by 1976 PA 297, without first obtaining the requisite legislative and electoral approval. The proceeds of these bonds or notes are to be used for public transportation purposes and the principal and interest on the bonds or notes are to be paid from certain specific monies in the General Transportation Fund.

Under § 10b of 1976 PA 297, MCLA 247.660b; MSA 9.1097(10c), the General Transportation Fund is created and an annual appropriation from the motor vehicle highway fund to the General Transportation Fund is provided in an amount equal to the net revenues from 1/2 cent per gallon of the tax on gasoline and liquefied petroleum gas.

This section also provides for the administration of the General Transportation Fund by the Department of State Highways and Transportation and lists general functions of the department, which are not to be construed as a limit on the department's functions. Those functions include: the administration and distribution of monies from the General Transportation Fund, the proceeds of notes and bonds sold for public transportation purposes, and monies from the general fund of the state in accordance with PA 297; the authority to apply for, receive and accept grants, gifts, contributions, loans and other assistance; the authority

to make direct expenditures or grants to public and private corporations for public transportation services using net collections deposited in the General Transportation Fund, general fund revenues, or the proceeds of notes and bonds authorized under § 10e(1)(a); and the authority to issue bonds or notes for public transportation purposes and to approve the issuance of bonds or notes by eligible authorities or eligible governmental agencies for public transportation services.

Section 10e of 1976 PA 297, MCLA 247.660e; MSA 9.1097(10f), provides for priorities in the use of the General Transportation Fund. The first priority is the payment of debt service on the notes and bonds sold by the state, eligible authorities and eligible governmental agencies for public transportation purposes. This section specifies the procedures for the issuance of notes or bonds by the state for public transportation purposes. It requires the resolution authorizing the issuance of the notes or bonds to contain an irrevocable pledge providing for the payment of the principal and interest on the notes or bonds from monies to be received from the General Transportation Fund. The total aggregate amount of notes and bonds that may be issued under this section and § 10b is limited to 75% of the amount appropriated to the General Transportation Fund in the preceding fiscal year *from the tax on gasoline and liquified petroleum gas.* The section states that these "revenue notes or bonds shall not be general obligations of the state or of any eligible authority or eligible governmental agency under this act. The revenue notes or bonds shall be payable solely from proceeds of *constitutionally restricted highway revenues* placed by law in the general transportation fund and appropriated from it, *the revenues being*

*derived from taxes upon gasoline and other restricted highway taxes as the legislature directs by law"*. The other priorities and provisions of this section do not appear to involve the possibility of state borrowing, and thus are not affected by or pertinent to the question under consideration.

Since it has been determined in part III of this opinion that the use of a portion of the revenues of the tax on gasoline and liquified petroleum gas for public transportation does not violate Const 1963, art 9, § 9, restricting the use of these revenues to highway purposes, the question here is whether the borrowing authorized under PA 297 offends Const 1963, art 9, § 15.

The notes or bonds authorized under PA 297 are designated revenue notes or bonds. By the statutory provisions for the authorization of these notes and bonds, they are to be payable *solely* from the proceeds of constitutionally restricted highway revenues derived from taxes upon gasoline and other restricted highway taxes as the Legislature directs by law.

It is unfortunate that the Legislature labelled these as "revenue" notes and bonds. A definition of such bonds can be found in *State Highway Commissioner v Detroit Controller, supra,* 349, where this Court said:

"Revenue bonds are issued to raise funds to purchase or construct utilities or other public structures and are payable only from the revenues received from the operation of the utilities or structures. The credit of the State is not pledged for their payment. Nor does the taxpayer pay for the structure, its cost being borne solely by those who use it."

The notes and bonds to be issued under the authority of PA 297 for public transportation pur-

poses will not be payable solely from the revenues received from the operation of the public transportation services. Consequently, they cannot be said to be revenue notes and bonds.

However, despite their misnomer, the notes and bonds appear to be of the nature of special obligation bonds. In *Schureman v State Highway Commission,* 377 Mich 609, 611–612; 141 NW2d 62 (1966), this Court said:

"Revenue bonds and special obligation bonds share an essential distinction from general obligation bonds. The credit of the State is pledged for the payment of general obligation bonds. It is not for revenue bonds and special obligation bonds. *Special obligation bonds are retired from special tax revenues earmarked for that purpose.*" (Emphasis added.)

This Court then found that bonds issued to finance the construction of a portion of an expressway which were to be paid by their terms from the motor vehicle highway fund were special obligation bonds and that Const 1963, art 9, § 15 did not apply to them because they were not general obligation bonds pledging the full faith and credit of the state.

It appears that the "revenue" notes and bonds authorized under PA 297 are analogous special obligation bonds. These notes and bonds do not pledge the full faith and credit of the state, nor of any eligible authority or eligible governmental agency.

Furthermore, these notes or bonds are "payable solely from proceeds of constitutionally restricted highway revenues placed by law in the general transportation fund and appropriated from it, the revenues being derived from taxes upon gasoline and other restricted highway taxes as the legisla-

ture directs by law." We read this limitation on the revenues available for the payment of these notes and bonds as necessarily implying that " * * * other restricted highway taxes" means " * * * other [constitutionally] restricted highway taxes", to make it clear that the only revenues in the general transportation fund that may be pledged for the payment of these notes and bonds, without offending Const 1963, art 9, § 15, are those revenues from constitutionally restricted sources authorized under Const 1963, art 9, § 9.

So construing this provision, we are of the opinion that the notes and bonds authorized under PA 297 are special obligation bonds and that Const 1963, art 9, § 15 does not apply to them because they do not pledge the full faith and credit of the state and they are payable solely from tax revenues constitutionally earmarked for highway purposes as defined by law.

KAVANAGH, C. J., and COLEMAN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with RYAN, J.

LEVIN, J. I concur in Parts III and IV of my colleagues' opinion.

As to Parts I and II, I agree with my colleagues that the bonds authorized by 1976 PA 297 are special obligation bonds, and that therefore the state would not, on account of their issuance,[1] become a "party to" or "financially interested in" a work of internal improvement.[2]

---

[1] See, Advisory Opinion re Constitutionality of 1973 PA 1 and 2, 390 Mich 166, 176–177; 211 NW2d 28 (1973); Schureman v State Highway Commission, 377 Mich 609; 141 NW2d 62 (1966); State Highway Commissioner v Detroit Controller, 331 Mich 337; 49 NW2d 318 (1951).

[2] "The state shall not be a party to, nor be financially interested in, any work of internal improvement, nor engage in carrying on any

It has not been made to appear and there is reason to doubt, based on the responses of counsel during the argument in this Court and the subsequently enacted appropriation acts, whether the state is or will become otherwise financially involved in the transportation programs of 1976 PA 295.

Unless and until the Legislature actually provides other funding or state credits, provisions of 1976 PA 295 regarding other financing are entirely anticipatory[3] and do not constitute an enactment on which we may give an advisory opinion.[4]

I would defer reaching the question of whether the transportation programs of 1976 PA 295 constitute "public" internal improvements until the state is actually about to become so otherwise involved and we are apprised of the manner and extent of its involvement.[5]

WILLIAMS, J., took no part in the decision of this case.

---

such work, except for public internal improvements provided by law." Const 1963, art 3, § 6.

[3] See *Board of Education of Oakland Schools v Superintendent of Public Instruction,* 392 Mich 613; 221 NW2d 345 (1974).

[4] See Const 1963, art 3, § 8:

"Either house of the legislature or the governor may request the opinion of the supreme court on important questions of law upon solemn occasions as to the constitutionality of legislation *after it has been enacted into law* but before its effective date." (Emphasis supplied.)

*See Request for Advisory Opinion on Constitutionality of 1975 PA 227,* 395 Mich 148; 235 NW2d 321 (1975).

[5] My colleagues equate "public" with public purpose while the address to the people provides:

"The new, abbreviated wording makes it clear that the state 'may not be a party to' nor 'financially interested' in internal improvements other than those of a public nature and by authorization of law." Const 1963, art 3, § 6, Convention comment.