COMMUNITY COLLEGE DISTRICT OF MONROE COUNTY v
LENNARD

Docket No. 144040. Submitted February 8, 1994, at Detroit. Decided April 19, 1994, at 9:00 A.M. Leave to appeal sought.

The Community College District of Monroe County brought an action in the Monroe Circuit Court against Gary L. and Karen S. Lennard, and others, seeking to quiet title to a disputed tract of land, an abandoned railroad bed. The plaintiff claimed that, pursuant to MCL 469.221; MSA 22.591, it was entitled to the land because it is the successor of the original grantor. The defendants argued that the statute does not apply to the facts of this case. The court, Harvey A. Koselka, J., agreed with the defendants and granted their motion for summary disposition. The plaintiff appealed.

The Court of Appeals *held:*

1. The statute, which provides that abandoned railroad rights of way revert to their original owners, by its explicit terms, applies only to railroad companies organized under any law of this state. When the tracks were taken up in 1954 they were owned by a railroad company that was a foreign corporation. Therefore, the statute does not apply in this case.

2. Application of the statute would be unconstitutional in this case. The land was originally acquired by eminent domain. Land obtained by eminent domain is taken by the state in fee simple, with no reversionary rights remaining in the original owner. The foreign railroad company had clear title when it dismantled the tracks, its successor foreign railroad corporation had clear title when it sold the land to the Edison Illuminating Company of Detroit, now Detroit Edison. The defendant landowners, the Lennards, acquired clear title in fee simple when they purchased the property from Detroit Edison in 1990.

3. Applying the statute retroactively to hold that the land should have been deeded back to the original owner's successors when the railroad was dismantled by the foreign railroad

REFERENCES

Am Jur 2d, Eminent Domain §§ 130, 132, 133; Railroads §§ 82-86.
What constitutes abandonment of a railroad right of way. 95 ALR2d 468.

company in 1954 would be unconstitutional because it would take away or impair vested rights acquired under existing laws, create new obligations, impose new duties, or attach new disabilities with respect to transactions or considerations already past.

Affirmed.

1. RAILROADS — RIGHTS OF WAY — ABANDONMENT — REVERSION OF PROPERTY INTEREST.

MCL 469.221; MSA 22.591, which provides that abandoned railroad rights of way revert to their original owners, applies only to railroad rights of way abandoned by railroad companies organized under any law of this state.

2. EMINENT DOMAIN — REVERSIONARY RIGHTS.

Land obtained by eminent domain is taken by the state in fee simple, with no reversionary rights remaining in the original owner.

*Braunlich, Russow & Braunlich, P.C.* (by *William H. Braunlich*), for the plaintiff.

*Lennard & Graham* (by *Philip D. Goldsmith*), for Gary L. and Karen S. Lennard.

Before: GRIBBS, P.J., and HOOD and H. E. BROWN,* JJ.

PER CURIAM. This is an action to quiet title in real estate. Plaintiff appeals as of right from the trial court's decision to grant defendants' motion for summary disposition. We affirm.

The disputed tract of land is an abandoned railroad bed, one hundred feet wide, that cuts across the southern wooded portion of plaintiff's main campus. Defendant landowners purchased the property in 1990 and gave plaintiff notice of their intent to build upon it a private driveway and to bulldoze shut a drainage ditch located on the property. Plaintiff sued for declaratory and injunctive relief.

* Circuit judge, sitting on the Court of Appeals by assignment.

The tract of land was originally part of the Gale Farm, which had pre-Revolutionary War origins. Under 1837 PA [97] and 1837 PA [67] the State of Michigan obtained the disputed tract, apparently by eminent domain, from the then owners of the Gale Farm. Railroad tracks were laid. In 1844, the Southern Railroad, a state-owned railroad, was created and became operational. In 1846, the railroad and its right of way were sold to a private Michigan corporation known as the Michigan Southern Railroad Company. In 1850, the state constitution was amended to prohibit state subsidies of works of internal improvement, including railroads. See Const 1850, art 14, § 9; see also *People ex rel Bay City v State Treasurer,* 23 Mich 499, 503-504 (1871).

In 1871 and 1873, the County of Monroe bought the land currently serving as plaintiff's main campus from the then owners of the Gale Farm. The deed contained no reservation, although clearly the disputed tract was already being used by the railroad. In 1887, 1887 PA 275, § 1, currently MCL 469.221; MSA 22.591, was passed, generally providing that abandoned railroad rights of way would revert to their original owners. This act forms the basis for plaintiff's claim and will be discussed in greater detail below.

Eventually, the railroad was sold to the New York Central Railroad, a foreign corporation. In 1954, the railroad tracks were dismantled and removed. In 1965, the County of Monroe sold plaintiff the area currently occupied by its main campus. That deed, however, contained a reservation explicitly excluding the disputed railroad right of way, which it described as being land "owned by others."

In 1968, the Penn Central Company, successor to the New York Central Railroad, deeded the dis-

puted tract to the Edison Illuminating Company of Detroit, now Detroit Edison. A gravel road was eventually installed. Defendant landowners bought the tract from Detroit Edison in 1990. Detroit Edison retained an easement over the tract.

At the heart of this case lies MCL 469.221; MSA 22.591, which, in pertinent part, states:

> *It shall be unlawful* for any railroad company, *organized under any law of this state,* and whose road has been *constructed wholly or in part by public aid* or local subscription given as a bonus for such construction, having once constructed and put in operation the whole or any portion of said road, and located and opened for business, stations and houses thereon, to thereafter *take up, abandon or cease the operation of its said track, or any portion thereof* or to close up and abandon its said stations and station houses, or to withdraw the agents therefrom, *except upon the decree or order of the circuit court* of the county or counties through which said road may run . . . . Provided, That no order or decree . . . shall be made . . . except upon condition that such railroad company first pay back to each individual, private, or public corporation, or to the heirs, executors, administrators, successors or assigns . . . all moneys received by such railroad company . . . as a bonus and interest . . . . And provided further, *That such railroad company first deed back to the person, persons or corporation from whom it was received or to his or its heirs, assigns, executors, administrators or successors, each and every tract, part or parcel of land or right of way, obtained from such person, persons or corporation.* [Emphasis added.]

Plaintiff argues that this statute—through MCL 469.222; MSA 22.592, which creates civil liability for violation of MCL 469.221; MSA 22.591—entitles it to the land because plaintiff is the successor of the original grantor. Defendants, on the other

hand, argued successfully below that this case does not meet the conditions required by the statute. We agree with defendants.

We note initially that, because the railroad was initially constructed by the state, it was "constructed wholly or in part by public aid." However, this is not sufficient under the act.

The statute, by its explicit terms, applies only to "railroad compan[ies] organized under any law of this state." When the tracks were "take[n] up" in 1954, they were owned by the New York Central Railroad, which later became the Penn Central Company, both of which are foreign corporations and therefore not subject to the act.

Second, we agree that application of the statute to these facts would be unconstitutional. The trial court's finding that the land was initially acquired by eminent domain has not been shown to be clearly erroneous. Land obtained by eminent domain is taken by the state in fee simple, with no reversionary rights remaining in the original owner. See *People ex rel Green v Michigan S R Co,* 3 Mich 496 (1855). Thus, the New York Central Railroad had clear title when it dismantled the tracks, Penn Central had clear title when it sold the land to Detroit Edison, and defendant landowners acquired clear title in fee simple. Applying the statute retroactively to hold that the land should have been deeded back to the Gale Farm successors in 1954 would be unconstitutional because it would take away or impair vested rights acquired under existing laws, create new obligations, impose new duties, or attach new disabilities with respect to transactions or considerations already past. See *In re Certified Questions (Karl v Bryant Air Conditioning Co),* 416 Mich 558, 572; 331 NW2d 456 (1982). We therefore agree with the

trial court that the statute cannot be construed to give plaintiff a claim to the land.[1]

Affirmed.

---

[1] Although not decided below, we also believe that plaintiff is estopped by laches from asserting its claim. We note that, when plaintiff acquired its land in 1965, the deed identified the tract as land "owned by others" and explicitly excluded it. At that time, the railroad tracks had already been removed. Plaintiff failed to take any action then or when Detroit Edison bought the land in 1968 or during the twenty-two years that Detroit Edison owned the land. Such delay should not operate to defendants' detriment.