ON REMAND
Before: Saad, P.J., and Neff and Hoekstra, JJ.
Neff, J.
This case is before us for the second time. In our prior decision, we held that the fifteen-mile- *540 long by one-hundred-foot-wide transportation corridor at issue, part of which traverses plaintiff Bingham Township, was not subject to the township’s local zoning ordinances, and, specifically, that in light of the Legislature’s expressed intent to establish and maintain Michigan trailways, the township’s local zoning ordinances are preempted. Bingham Twp v RLTD Railroad Corp, 228 Mich App 154, 159; 576 NW2d 731 (1998). The Supreme Court, in lieu of granting the township’s application for leave to appeal, remanded the case to this Court “to determine whether and how the regulatory provisions of the Michigan trailways act [MTA], MCL 324.72101 et seq.; MSA 13A.72101 et seq., and the State Transportation Preservation Act [STPA], MCL 474.51 et seq.) MSA 22.180(21) et seq., apply to the land corridor in question.” 460 Mich 867.[1]
We again affirm.
i
The underlying facts were set forth in our previous opinion as follows:
RLTD owns a railroad corridor, approximately one hundred feet wide and fifteen miles long, that traverses plaintiff. The National Trails System Act (nta) provides that jurisdiction over such rail corridors is vested with the Interstate Commerce Commission, which has subsequently become known as the Federal Surface Transportation Board (STB). 16 USC 1241 et seq. Pursuant to the NTA, RLTD sought permission from the STB to abandon the rail line so that it could be used by defendant lta [Leelanau Trails Association] as a rail-trail (a process known as “railbanking”). The STB granted RLTD’s request, subject to a require *541 ment that the corridor be converted back to a rail line if the need arose. Consistent with this order, lta has developed the corridor into a bicycle-and-commuter trail that has been in operation since August 1996.[2]
Plaintiff brought a declaratory action in the circuit court requesting the court to establish the parties’ rights with regard to the trail and to preliminarily enjoin lta from proceeding with construction and advertising of the trail until the court issued its declaratory judgment. In its complaint, plaintiff alleged that defendant had publicly stated (1) that when fully developed, the trail could be used by 60,000 to 70,000 people a year and (2) that lta’s plan for the construction of the trail includes the paving of a ten-foot-wide trail and the construction of additional structures, including permanent bathroom facilities, a trail office, trail-fee booths, an equipment building, picnic pavilions, a trail visitors center, rest benches, picnic tables, playground elements, handicapped-accessible exercise stations, and bike racks. Plaintiff also alleged that lta had refused to submit its plan for the trail to plaintiff’s planning commission for approval, in accordance with the provisions of MCL 125.330; MISA 5.2963(110), or to apply for a land-use permit from plaintiff’s zoning administrator as required by § 15.4.1 of plaintiff’s zoning ordinance.
The circuit court held that plaintiff, through its zoning powers, could not prevent lta from constructing a recreational trail on an old railway line owned by RLTD because the use of such zoning powers was preempted by both federal and state law. The court thus granted defendants’ motion for summary disposition pursuant to MCR 2.116(C)(8), and denied plaintiff’s request for a preliminary injunction. [Bingham Twp, supra at 155-156.]
*542 n
Initially, we address the first part of the Supreme Court’s directive and determine whether the STPA and the mta apply to the land corridor at issue here.
A
The STPA is designed to improve and maintain transportation services in Michigan. Advisory Opinion on Constitutionality of 1976 PA 295, 1976 PA 297, 401 Mich 686, 693; 259 NW2d 129 (1977). The Legislature has declared in the STPA that “[t]he preservation of abandoned railroad rights of way for future rail use and their interim use as public trails is declared to be a public purpose.” MCL 474.51(3); MSA 22.180(21)(3). To this end, the STPA authorizes the state transportation department to acquire a railroad right of way and preserve it for future rail use. Upon acquisition of a right of way, the department may develop it for use as a “commuter trail,” which is defined as “a trail, lane, path, road, or other right of way on which motorized vehicles are not permitted and which has the primary or substantial purpose and result of providing a means for people to move from 1 location to another.” MCL 474.60(11) and (12); MSA 22.180(30)(11) and (12), MCL 474.42(b); MSA 22.180(22)(b).
The STPA provides that it is “upon acquisition of a right of way” that the department may develop it for use as a commuter trail. It is without question that defendant RLTD has sold its interest in the corridor *543 to defendant LTA on land contract.[3] Accordingly, because the department does not own the land corridor at issue, we find that the specific regulations contained in the stpa do not apply.[4]
B
We reach a different conclusion with regard to the applicability of the mta. The mta begins with the following definition of “Trailway”:
“Trailway” means a land corridor that features a broad trail capable of accommodating a variety of public recreation uses. [MCL 324.72101(f); MSA 13A.72101(f).]
The MTA further defines a “Michigan trailway” as follows.
“Michigan trailway” means a trailway designated by the commission [of natural resources] pursuant to section 72103. [MCL 324.72101(e); MSA 13A.72101(e).]
MCL 324.72103; MSA 13A.72103 sets forth the following requirements for a “Michigan trailway”:
(1) Upon petition by any person or on its own motion, the commission may designate a trailway in this state as a “Michigan trailway”. The petition or motion shall propose permitted uses of the trailway. The commission shall not designate a trailway as a Michigan trailway unless it meets, *544 or will meet when completed, all of the following requirements:
(a) The land on which the trailway is located is owned by the state or a governmental agency, or otherwise is under the long-term control of the state or a governmental agency through a lease, easement, or other arrangement. If the land is owned by a governmental agency, the commission shall obtain the consent of the governmental agency before designating the land as part of a Michigan trailway.
(b) The design and maintenance of the trailway and its related facilities meet generally accepted standards of public safety.
(c) The trailway meets appropriate standards for its designated recreation uses.
(d) The trailway is available for designated recreation uses on a nondiscriminatory basis.
(e) The trailway is a multiuse trail suitable for use by pedestrians, by people with disabilities, and by other users, as appropriate.
(f) The trailway is, or has potential to be, a segment of a statewide network of trailways, or it attracts a substantial share of its users from beyond the local area.
(g) The trailway is marked with an official Michigan trailway sign and logo at major access points.
(h) The trailway is not directly attached to a roadway, except at roadway crossings.
(i) Where feasible, the trailway offers adequate support facilities for the public, including parking, sanitary facilities, and emergency telephones, that are accessible to people with disabilities and are at reasonable frequency along the trailway.
Q) Potential negative impacts of trailway development on owners or residents of adjacent property are minimized through all of the following:
(i) Adequate enforcement of trailway rules and regulations.
(ii) Continuation of access for trailway crossings for agricultural and other purposes.
(iii) Construction and maintenance of fencing, where necessary, by the owner or operator of the trailway.
*545 (iv) Other means as considered appropriate by the commission.
(k) Other conditions by the commission.
The township maintains that the regulations contained in the mta apply only to those trailways already designated as “Michigan trailways.” Therefore, the township argues, because the trailway at issue here has not been designated a “Michigan trailway,” the mta does not apply to it. We disagree.
In contrast to the stpa, which requires that the Department of Transportation first acquire the right of way before developing it for use as a commuter trailway, the MTA provides that state ownership of the land corridor is but one of several requirements that must be met before the trailway is designated a “Michigan trailway.” It is clear from the language of the MTA that the Legislature has contemplated an ongoing process by which trailways are developed and eventually obtain “Michigan trailway” status. In this regard, we find it significant that the Legislature chose not to require state ownership of the land on which a trailway lies as a condition precedent to its development as a Michigan trailway. Rather, the Legislature stated that it is only “when completed” that the trailway must meet all of the requirements contained in subsection 72103(1), including state ownership of the land on which it sits.[5]
The record before us indicates that the land corridor at issue here contains a “trailway,” as that term is *546 defined in subsection 72101(f) of the mta. Though it has not yet been designated a “Michigan trailway,” it is making progress toward this goal,[6] and thus it is appropriate to apply the regulatory provisions contained in the MTA to the trailway.
m
Having determined that the MTA applies to the land corridor in question, we turn to the question of how its regulations apply. Specifically, we must determine whether the mta preempts the township’s local zoning ordinances. As in our original opinion, we find that it does.
A
The test for determining whether a government unit, such as the commission or the DNR, is immune from local zoning ordinances is legislative intent. Burt Twp v Dep’t of Natural Resources, 459 Mich 659, 663; 593 NW2d 534 (1999). Therefore, this Court must thoroughly examine the statutory provisions at issue, including the Township Rural Zoning Act (trza), MCL 125.271 et seq.; MSA 5.2963(1) et seq., the township planning act (tpa), MCL 125.321 et seq.; MSA 5.2963(101) et seq., and the mta itself. The Legislature need not use any particular taiismanic words to indicate its intent. Burt Twp, supra at 669. To the contrary, “[t]he Legislature need only use terms that *547 convey its clear intention that the grant of jurisdiction given is, in fact, exclusive.” Id.
B
Our examination of the relevant statutes here leads inescapably to the conclusion that the Legislature has clearly expressed its intent that local zoning ordinances are to be subordinate to the regulations contained in the mta.
i
The trza and the TPA generally grant townships broad regulatory powers involving land use and development. For example, the trza provides:
(1) The township board of an organized township in this state may provide by zoning ordinance for the regulation of land development and the establishment of districts in the portions of the township outside the limits of cities and villages which regulate the use of land and structures; to meet the needs of the state’s citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land; to insure that use of the land shall be situated in appropriate locations and relationships; to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities; to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements; and to promote public health, safety, and welfare. [MCL 125.271(1); MSA 5.2963(1)(1) (emphasis added).]
Similarly, the TPA provides as follows:
Whenever the planning commission has adopted the basic plan of the township of 1 or more major sections or dis *548 tricts thereof, no street, square, park or other public way, ground or open space, or public building or structure, shall be constructed or authorized in the township or in the planned section and district until the location, character and extent thereof shall have been submitted to and approved by the planning commission. [MCL 125.330; MSA 5.2963(110).]
Plaintiff township argues that these statutory provisions unequivocally show a legislative intent that townships should have an involvement in the construction of streets, parks, public ways, and transportation systems that are to be located within the township. We agree. However, this does not end our inquiry. We must also examine the mta to see if there is a clearly expressed legislative intent to exempt the commission’s oversight of the development of Michigan trailways from the township’s zoning ordinances. Burt Twp, supra at 666.
2
As we have previously mentioned, the mta gives the commission authority to designate a trailway as a “Michigan trailway” when all of the requirements contained in § 72103 are either met or will be met when the trailway is completed. Among these requirements are the posting of an official Michigan trailway sign and logo, the availability of adequate parking, and the establishment of sanitary and other facilities for designated recreation uses. MCL 324.72103(1); MSA 13A.72103(1). In addition, the trailway must be a “multiuse trail suitable for use by pedestrians, by people with disabilities, and other users, as appropriate,” it must not be directly attached to a roadway (except at roadway crossings), and may be required to have *549 fencing “where necessary.” Id. The commission is given sole authority over these matters of design and may also impose “other conditions” on the Michigan trailway. Id.
The mta further provides that the commission shall establish permitted uses for the Michigan trailway:
(3) At the time a Michigan trailway is designated under subsection (1), the commission shall, in consultation with the governmental agencies in which the trailway is located, establish uses to be permitted on the trailway. In establishing permitted uses, the commission shall consider all of the following:
(a) The safety and enjoyment of trailway users.
(b) Impacts on residents, landowners, and business adjacent to the trailway.
(c) Applicable local ordinances. [MCL 324.72103(3); MSA 13A.72103(3) (Emphasis added).]
We find that this statutory language clearly establishes the Legislature’s intent that local ordinances are to be considered, but shall not govern, in the development of Michigan, trailways. The commission is given sole authority to determine what is appropriate and necessary for a developing Michigan trailway. Some of these matters such as the posting of signs, construction of sanitation and parking facilities, and, indeed, the makeup of the trail itself and surrounding fencing, are matters that might otherwise fall under a township’s zoning authority. However, in the MTA, the Legislature has expressly provided that the commission’s authority regarding such matters shall not be subject to nor dependent on the approval of local authorities.
This does not mean, however, that townships and other local governmental units are to have no input *550 into the development of Michigan trailways that traverse their jurisdiction. To the contrary, the mta clearly requires that the commission consider the effect on the local communities through which Michigan trail-ways pass. For example, before a trailway is designated a Michigan trailway, the commission must determine that any potential negative effect of the trailway development on owners or residents of adjacent property is minimized. The mta also contains the following provision:
(2) The commission shall not designate a trailway a Michigan trailway under subsection (1) unless a public hearing has been held in the vicinity of the proposed Michigan trailway to take testimony and gather public opinion on the proposed designation including, but not limited to, the proposed uses of the trailway and whether or not motorized uses are appropriate for the trailway. The public hearing shall be held at a location and at a time calculated to attract a fair representation of opinions on the designation. A transcript or a summary of the testimony at the public hearing shall be forwarded to the commission. [MCL 324.72103(2); MSA 13A.72103(2).]
Furthermore, as noted above, subsection 72103(3) of the mta provides that local ordinances must be considered by the commission in estabhshing permitted uses for the trailway. It is therefore clear that although local ordinances are not controlling, they must be considered during the process of developing the statewide system of Michigan trailways envisioned by the Legislature.
3
In addition to the Legislature’s expressed intent that local zoning ordinances be subordinate to the *551 commission’s development of Michigan trailways, we remain convinced that the Legislature’s goal of establishing a statewide system of interjurisdictional trail-ways as an important public purpose would be thwarted if the development of Michigan trailways were subject to local land-use ordinances such as those asserted by the township. Indeed, clearly expressed legislative declaration would be frustrated if every governing body through which a trailway passes were permitted to impose its individual zoning ordinances on the trailway:[7]
The legislature finds and declares that a statewide system of trailways will provide for public enjoyment, health, and fitness; encourage constructive leisure-time activities; protect open space, cultural and historical resources, and habitat for wildlife and plants; enhance the local and state economies; link communities, parks, and natural resources; create opportunities for rural-urban exchange, agricultural education, and the marketing of farm products; and preserve corridors for possible future use for other public purposes. Therefore, the planning, acquisition, development, operation, and maintenance of Michigan trailways is in the *552 best interest of the state and is declared to be a public purpose. [MCL 324.72102; MSA 13A.72102.]
In the present case, we find that if the township were permitted to hinder and otherwise interfere with the process of the trailway’s development into a Michigan trailway, construction and maintenance of the trailway would be virtually impossible.[8]
IV
The mta anticipates a process in which a trailway becomes a designated “Michigan trailway.” During this process, local zoning cannot be permitted to frustrate the Legislature’s clearly expressed intent to encourage the development of such interjurisdictional trailways. Accordingly, we conclude, as we did in our original opinion, that “[i]n this conflict between state law and plaintiff’s effort to zone the property in ques *553 tion . . . plaintiff’s zoning ordinances are preempted.” Bingham Twp, supra at 159.
Affirmed.

 Pursuant to Court of Appeals policy, Judge Hoekstra has been substituted for Judge Reilly, who has since retired.

 The stb later reversed this order, holding that it did not have jurisdiction over the corridor because the rail line previously had been abandoned. The Sixth Circuit Court of Appeals has recently affirmed the stb’s decision. RLTD Railway Corp v Surface Transportation Bd, 166 F3d 808 (CA 6, 1999).

 Before selling the right of way to lta, RLTD offered it to the department and to the Department of Natural Resources, as required by the stpa. MCL 474.58(2); MSA 22.180(28)(2). Both entities declined to pinchase the right of way, with the dnr expressly stating its approval of lta’s purchase of the corridor.

 We note, however, that our reference to the stpa in our original opinion was solely in support of our assertion that the Legislature has at least twice (in the stpa and the mta) expressed its intent to develop and maintain trailways throughout the state. Bingham Twp, supra at 158.

 We find further support for the conclusion that the Legislature intended an ongoing process of establishing Michigan trailways in subsection 72103(l)(f), which provides that a trailway may qualify for designation as a Michigan trailway if it “has potential to be a segment of a statewide network of trailways.” (Emphasis added.)

 We note that many of the elements of lta’s plan for the trailway about which the township complains, including a paved surface, restrooms, handicapped-accessible exercise stations, and other recreational items, are elements required by the Legislature for Michigan trailways. MCL 324.72103(1); MSA 13A.72103(1).

 A similar result was reached in Capital Region Airport Authority v DeWitt Charter Twp, 236 Mich App 576; 601 NW2d 141 (1999), in which this Court held that the airport authorities act, MCL 259.801 et seq.; MSA 10.380(1) et seq., and the Aeronautics Code, MCL 259.1 et seq.; MSA 10.101 et seq., revealed a clear legislative intent not only to enable the Capital Region Airport Authority to operate airports, but also to “charge the agency with the responsibility of promoting aeronautical activities for the public good, and to confer on the agency all the power necessary to perform this function.” Id. at 591. The Court noted that this legislative goal “would be substantially undermined if the agency’s authority over aeronautics were subordinated to a local government’s land use regulations.” Id. at 591-592. In this regard, the Court stated that such local control “would hamper uniformity not only from airport to airport, but also within an individual airport where ... the airport grounds lie in more than one municipality.” Id.

 Indeed, the township is attempting to use local zoning ordinances to thwart what the Legislature has declared to be a public purpose. For example, we note that the township has passed a resolution stating its opposition to “a recreational trail through our citizens’ private property.” The resolution further states that the township’s zoning ordinance does not recognize “recreational trails” in agricultural zoning districts, into which approximately ninety-eight percent of the proposed Michigan trailway falls. We further note that, despite our urging the parties to work together to balance the legislative goal of establishing a statewide system of trailways with the interests of surrounding landowners and residents, Bingham Twp, supra at 159, n 4, defendants’ application for a special-use permit has been languishing before the township’s planning commission for well over two years. In addition, we note the township’s recent amendment of its zoning ordinance, requiring a forty-foot setback from private property and public rights of way. Such tactics do nothing more than serve to prevent the mta from achieving its purpose.